1998 ME 196

**Steven Howard OKEN**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 4, 1998.

Decided Aug. 3, 1998.

---

Jane Elizabeth Lee (orally), Portland, for plaintiff.

Andrew Ketterer, Attorney General, Donald W. Macomber (orally), Joseph Wannamacher, Asst. Attys. Gen., Augusta, for the State.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

[¶ 1] Steven Howard Oken appeals from a judgment entered in the Superior Court (York County, *Crowley, J.*) denying his petition for post-conviction review. Oken contends that his due process rights were violated when the court denied his request for a writ of habeas corpus *ad testificandum* and conducted an evidentiary hearing on disputed issues of fact relating to his claim of ineffective assistance of counsel in his absence. Discerning no error or abuse of discretion, we affirm the judgment.

[¶ 2] In 1989, Oken entered guilty pleas, pursuant to M.R.Crim.P. 11(a)(2) and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970),[1] to the following crimes: murder, 17–A M.R.S.A. § 201(1)(A) (1983); robbery with a firearm, *id.* §§ 651(1)(D), 1252(4) (1983); and theft, *id.* §§ 359(1), 362(3)(A) (1983). When this plea was entered, murder and other charges were pending against Oken in Maryland. In Maine, Oken was represented by two experi-

---

1. In *Alford,* the Court held that a court may constitutionally accept a guilty plea from a defendant who affirmatively protests his innocence when the defendant intelligently concludes that the plea is in his interests and the record contains strong evidence of actual guilt. *Alford,* 400 U.S. at 37, 91 S.Ct. at 167.

enced criminal defense attorneys, one a member of the Maine bar and the other a member of the Maryland bar. During the allocution, Oken represented that his plea was voluntary and not made as a result of any promises or inducements. He was convicted and sentenced to life imprisonment.

[¶ 3] Following his convictions, Oken filed an appeal challenging the denial of his motion to suppress evidence obtained from a warrantless search of his motel room in Kittery. Holding that Oken had abandoned the room and therefore had no constitutionally protected reasonable expectation of privacy in it, we affirmed the convictions. *See State v. Oken,* 569 A.2d 1218 (Me.1990),. The life sentence was also affirmed. *See State v. Oken,* No. AD–89–49 (Me.App.Div. July 15, 1991).

[¶ 4] In October 1989, the Governors of Maine and Maryland entered into an agreement to return Oken to Maryland to stand trial on the Maryland charges.[2] In Maryland, Oken was convicted of first degree murder following a jury trial.[3] During the penalty phase of the trial, the State introduced evidence of Oken's Maine convictions. The jury sentenced Oken to death. Oken also pleaded guilty in Maryland to a second murder charge, and received a sentence of life imprisonment for the ensuing conviction. His Maryland appeals were unsuccessful. *See Oken v. State,* 327 Md. 628, 612 A.2d 258 (1992), *cert. denied,* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993).[4] Oken remains in the custody of the State of Maryland.

[¶ 5] In 1991, while incarcerated in Maryland, Oken filed this petition for post-conviction review. *See* 15 M.R.S.A. §§ 2124, 2125 (Supp.1997); M.R.Crim.P. 65–78. He alleges that he had received ineffective assistance of counsel, in that his attorneys assured him that an *Alford* plea to the Maine charges

could not be used against him in the Maryland proceedings, and that he would serve his entire Maine sentence before being returned to Maryland for execution of any sentence imposed there. Oken further alleges that, had he known that those assurances were inaccurate, he would not have given up his right to a trial in Maine by entering a plea.

[¶ 6] In 1993, Oken moved for a writ of habeas corpus *ad testificandum* directing that he be transported from Maryland to Maine for the post-conviction hearing. The court declined to issue the writ, but did authorize depositions of Oken and others in Maryland. Oken and the Maryland attorney who represented him in Maine were deposed in Maryland. Oken was present and represented by counsel during the attorney's deposition. Oken's father, mother and sister were also deposed in Maryland.

[¶ 7] In June 1995, the court denied Oken's renewed motion seeking a writ of habeas corpus *ad testificandum.* An evidentiary hearing was held in Maine; Oken was not present, but was represented by counsel. The court ordered that a transcript of the hearing be prepared. At the hearing, the court heard testimony from three witnesses: the Maine attorney who represented Oken when he entered the plea, Dr. Susan Righthand, and Oken's mother. Transcripts of the depositions of Oken, his sister, and his Maryland attorney were admitted in evidence, as well as the affidavits of another Maryland attorney and Dr. Henry Payson, a psychiatric expert retained by Oken.[5]

[¶ 8] After travelling to Maryland to consult with Oken, Oken's attorney recalled Oken's former Maine attorney for further cross-examination at a second hearing. After reviewing the transcripts and evidence with his attorney, Oken was deposed again in Maryland in June 1996.

---

2. Oken challenged the validity of the executive agreement by filing a petition for habeas corpus in the Superior Court (Knox County). The petition was denied.

3. Oken was also convicted of first degree sexual assault, burglary and use of a handgun during a violent crime. He was acquitted of robbery.

4. In Maryland, Oken challenged the same search of the motel room in Kittery that he had challenged in Maine. The challenge was similarly unsuccessful. *See Oken v. State,* 612 A.2d at 267–70.

5. Oken's mother and his sister were present when Oken discussed with his attorneys the possibility of entering a guilty plea to the charges in Maine.

[¶ 9] Characterizing Oken's former Maine attorney as a "credible, competent, and compelling witness to the events surrounding Oken's plea[,]" the court found that Oken's former attorneys did not guarantee Oken that he would serve his entire sentence in Maine before being returned to Maryland. The court also found that Oken was informed of the risk that the Interstate Compact Agreement on Detainers, 34–A M.R.S.A. §§ 9601–9636 (1988), would be circumvented by an executive agreement, allowing Oken to be returned to Maryland for trial and execution of any sentence imposed after trial. The court also rejected Oken's claim that his attorneys' advice concerning the risks of an *Alford* plea was deficient.[6] Following the court's denial of his petition, Oken filed a notice of appeal pursuant to 15 M.R.S.A. § 2131(1) (Supp.1997) and M.R.Crim.P. 76(b). We granted a certificate of probable cause permitting Oken to proceed with an appeal on the sole issue of his right to be present at the post-conviction evidentiary hearing.

[¶ 10] Oken first contends that the Due Process Clauses of the state and federal constitutions require presence of a petitioner at any post-conviction proceeding when "his absence might frustrate the fairness" of the proceeding. Specifically, he asserts that conducting an evidentiary hearing in his absence was fundamentally unfair in two respects: first, he was denied an opportunity to consult with and assist his counsel during the cross-examination of other witnesses, and second, the court could not have properly evaluated the relative credibility of the witnesses without viewing all of the witnesses. Oken also contends that the denial of his petition for a writ violated his Sixth Amendment rights, and therefore violated his Due Process Rights.

[¶ 11] We first address Oken's Sixth Amendment argument. The Due Process Clause of the Fourteenth Amendment incorporates the Confrontation Clause of the Sixth Amendment, which provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Me. Const. art. I, § 6 ("In all criminal prosecutions, the accused shall have a right . . . [t]o be confronted by the witnesses against the accused[.]").[7] In *Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), the Supreme Court held that the exclusion of the defendant from a hearing to determine two minor witnesses' competency to testify did not violate the defendant's Confrontation Clause rights. *See id.* at 744, 107 S.Ct. at 2667. The opportunity to cross-examine the witnesses, a primary interest protected by the Confrontation Clause, was not frustrated because the defendant "had the opportunity for full and effective cross-examination of the two witnesses during trial[.]" *Id.*

■ [¶ 12] Assuming, without deciding, that the Confrontation Clause of the Sixth Amendment applies in a post-conviction review proceeding,[8] there was no violation of that constitutional guarantee in this case. Oken had an opportunity for full and effective cross-examination of the witnesses who testified at the hearing, despite his physical absence from the hearing. Oken was represented by counsel at every stage of the proceeding. He was present at the deposition of his former Maryland attorney, and was represented by an attorney during the testimony of all other witnesses, including the attorney from Maine who formerly represented him. He was permitted to consult with his attorney, to review the hearing transcripts of the testimony of the witnesses in Maine, and,

---

6. In post-conviction proceedings in Maryland, Oken litigated the same issues he raises in the instant petition. He challenged the effectiveness of his representation in Maine, including the advice to enter an *Alford* plea and the representation that the Maine sentences would have to be served before execution of any sentences in Maryland. The Maryland courts rejected Oken's claims. *See Oken v. State,* 343 Md. 256, 681 A.2d 30, 49–51 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997).

7. Oken does not contend that Article I, Section 6 of the Maine Constitution provides any greater protection than its federal counterpart.

8. Although the issue has not been conclusively resolved, there is authority for the proposition that the Confrontation Clause of the Sixth Amendment does not apply in a post-conviction review proceeding. *See, e.g., Little v. Rhay,* 68 Wash.2d 353, 413 P.2d 15 (1966).

through his attorney, to recall and further cross-examine those witnesses. Indeed, that right to recall and further cross-examine key witnesses after reviewing their testimony and consulting with his attorney is more than Oken would have been entitled to if he had been present at the evidentiary hearing. For these reasons, Oken's Sixth Amendment argument is unavailing.[9]

■ [¶ 13] Because Oken cannot rely on a Sixth Amendment violation in support of his claim that his Due Process Rights were violated, he must demonstrate that the proceeding was fundamentally unfair, so lacking in fairness that it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). This Oken has failed to do. The United States Supreme Court has "assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. at 745, 107 S.Ct. at 2667 (*quoting Snyder v. Massachusetts*, 291 U.S. at 105–06, 54 S.Ct. at 332). The factors supporting the conclusion that Oken was not denied an opportunity for effective cross-examination of the witnesses at the hearing

also establish the fundamental fairness of the hearing.[10]

[¶ 14] Two additional contentions advanced by Oken deserve comment. First, Oken argues that his inability to consult with his post-conviction counsel during the hearing "practically guaranteed poor cross-examination." In fact, the contrary is true: as noted above, the ability to cross-examine witnesses after reviewing the hearing transcript and consulting with his attorney may have resulted in more effective cross-examination. Second, Oken argues that the court could not properly assess his credibility without seeing him and hearing his live testimony. Insofar as his argument is based on the notion that credibility determinations are often based on the factfinder's perceptions of a witness, Oken is correct. *See* 81 Am.Jur.2d *Witnesses* § 1038 (1992). Nevertheless, credibility determinations do not rest solely on the factfinder's ability to perceive the witness and the use of deposition testimony is an accepted practice. Here, the trial court's credibility determination did not render the post-conviction hearing fundamentally unfair.

■ [¶ 15] Finally, we discern no merit in Oken's argument that he had a statutorily-granted right to attend the hearing. *See* 15 M.R.S.A. §§ 2121–2132 (Supp.1997).[11] Maine's post-conviction statute provides that, in all respects not covered by the statute, the procedures to be used in post-conviction cases are governed by rules promulgated by the Supreme Judicial Court. *See id.*

**9.** Although the opportunity for full and effective cross-examination is not the sole interest protected by the Sixth Amendment, *see, e.g., Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the Supreme Court has never held that "the Confrontation Clause guarantees criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990).

**10.** Although Oken disavows any intention to assert a procedural due process claim, we note that such a claim would fail. In analyzing procedural due process claims, we consider the factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Those factors are:

[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903. Balancing these factors leads to the conclusion that Oken did not suffer a deprivation of procedural due process. The procedures employed by the court did not create a serious risk of an erroneous deprivation of Oken's substantial interests.

**11.** Title 28 U.S.C. § 2243 (1948), a provision of the *federal* post-conviction statute suggests that the presence of a post-conviction petitioner may be required at an evidentiary hearing. That statute, as well as federal precedent interpreting other federal statutes, are not controlling in this state proceeding.

§ 2129(5). Nothing in the statute or the Rules of Criminal Procedure secures to a post-conviction petitioner the absolute right to attend an evidentiary hearing. We are aware of authority suggesting that the petitioner should be present at an evidentiary hearing in a post-conviction proceeding. *See* 3 Cluchey & Seitzinger, *Maine Criminal Practice* § 73.4 at X–89 (1995); 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 35.5 at 290 (1967). In most instances, the petitioner should be and is present. The State concedes and we agree that, in the typical post-conviction proceeding, there is no reason not to require the petitioner's physical presence at a hearing. Nevertheless, in this unusual case, whether the Superior Court could have compelled Oken's presence at a hearing in Maine is unclear. Oken is incarcerated in Maryland and subject to a death sentence and a sentence of life imprisonment.

The entry is:

Judgment affirmed.