# United States Court of Appeals
## For the First Circuit

_____

No. 00-1186

UNITED STATES OF AMERICA,

Petitioner, Appellee,

v.

MICHAEL FRIERSON,

Respondent, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

_____

Before

Boudin, Stahl, and Lynch, Circuit Judges.

_____

Amy Baron-Evans, Federal Defender Office, with whom Owen S. Walker, Federal Defender Office, was on brief, for appellant.
Peter K. Levitt, Assistant U.S. Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

_____

March 31, 2000
_____

**LYNCH, Circuit Judge**. This case concerns the procedures for involuntarily committing a federal prisoner, Michael Frierson, to a medical center for in-patient care for a mental disease. Because of the resulting infringement on the liberty interests that even an imprisoned person retains, such commitments are girded by statutory procedural requirements set forth in 18 U.S.C. § 4245. Those statutory procedures were Congress's response to Vitek v. Jones, 445 U.S. 480, 491-94 (1980), which held that the involuntary transfer of a prisoner to a mental hospital implicated liberty interests protected by constitutional due process.[1] While other circuits, which have within their geographic territory federal penal institutions, have reviewed proceedings under § 4245 before, this circuit has not. With the opening of the new Federal Medical Center-Devens in Massachusetts (FMC-Devens) on the site of the former Ft. Devens, cases under the statute may now arise in this circuit, as this one has. Because the district court departed from statutory procedures by holding the commitment hearing in the absence of the inmate, we vacate the order of commitment.

**I.**

We describe what is at stake and thus the reasons for the procedural protections required.

---

[1]    See S. Rep. No. 98-225, at 247-49 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3429-31.

-2-

Involuntary commitment to a federal medical center removes a prisoner from the general prison population and attaches to him or her a certain stigma. See Vitek, 445 U.S. at 492. Once hospitalized, the prisoner can be involuntarily medicated (following other due process procedures). See 28 C.F.R. § 549.43; cf. Vitek, 445 U.S. at 492. And once there, the inmate's commitment lasts until one of three things happens. Commitment lasts until the director of the facility determines that the prisoner is no longer in need of care. See 28 U.S.C. § 4245(e). But during a prisoner's commitment, the director of the medical facility need only make an annual report on the person's mental condition and his or her continued need for hospitalization. See 28 U.S.C. § 4247(e)(1)(B). Or commitment lasts until counsel for the person files a motion for a hearing and a judge determines, by a preponderance of the evidence, that the person should be discharged. See 28 U.S.C. § 4245(d). But such a motion cannot be filed within 180 days of "a court determination that the person should continue to be hospitalized." 28 U.S.C. § 4247(h). Or commitment can last until the person's sentence of imprisonment has expired.[2] See 28 U.S.C. § 4245(d). But under a separate section a person due for release can continue to be hospitalized if a judge determines, by clear and convincing evidence, that "the person is presently suffering from a

---

[2] Frierson's sentence expires on October 9, 2000. He could be released as early as June 20, 2000, because of good conduct.

-3-

mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 28 U.S.C. § 4246(d); see also 28 U.S.C. § 4246(a), (c).

Given these consequences, it is no surprise that the statute that authorizes involuntary commitment is sensitive to constitutional due process concerns. The provisions at issue in this case, 28 U.S.C. §§ 4245 and 4247(d), are illustrative. A person whose mental condition is at issue may not be committed until there is a hearing at which the prisoner "shall be represented by counsel [or counsel shall be appointed for him if he or she is financially unable to obtain adequate counsel and] shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 28 U.S.C. § 4247(d); see also 28 U.S.C. § 4245(c).

## II.

Michael Frierson is serving a 48-month federal sentence for importation of methamphetamine.[3] Until 1999, Frierson was imprisoned at the Federal Correctional Institution in Petersburg, Virginia, and the Federal Medical Center in Lexington, Kentucky (FMC-Lexington),

---

[3] Frierson was originally found incompetent to stand trial pursuant to 18 U.S.C. § 4241 and was committed for treatment to the United States Medical Center for Federal Prisoners in Springfield, Missouri. He was tried after being restored to competency.

where he had been committed, but then discharged, under an earlier petition pursuant to 18 U.S.C. § 4245.[4]  Since his stay at FMC-Lexington, Frierson had been taking lithium voluntarily as treatment for Bipolar I Disorder, Severe with Psychotic Features.  Frierson was transferred from FMC-Lexington to FMC-Devens on May 11, 1999.[5]  On September 3, 1999, Frierson stopped taking the lithium, and his condition deteriorated.  As a result, he was placed in the Diagnosis and Observation area of FMC-Devens's Mental Health Unit.

On November 10, 1999, the government filed a motion[6] with the district court to commit Frierson pursuant to 28 U.S.C. § 4245.  The purpose of obtaining the commitment order, it appears, was to allow doctors to treat him involuntarily.  Involuntary treatment is permitted only after commitment and, then, only after an opportunity for an administrative hearing and appeal.  See 28 C.F.R. § 549.43; cf. Washington v. Harper, 494 U.S. 210, 214-17 (1990).  Compare United States v. Morgan, 193 F.3d 252, 262-64 (4th Cir. 1999), with United States v. Brandon, 158 F.3d 947, 952-55 (6th Cir. 1998).  Because

---

[4]     Frierson had refused his medication while at FCI-Petersburg and, subsequently, decompensated.

[5]     The parties have not told us, nor does the record reveal, why, and under what authority, Frierson continued to be incarcerated at federal medical centers subsequent to his discharge from the earlier commitment order.

[6]     In technical terms, the statute refers to a motion, which is what the government filed, rather than a petition.

Frierson was indigent, counsel was appointed. Counsel visited Frierson and found that, while Frierson was disturbed, he appeared to understand what courts and lawyers were and that a motion had been filed for commitment.

On December 14, 1999, the district court held a conference with the government and Frierson's appointed counsel, but without Frierson. Both sides seemed to agree that Frierson met the criteria for commitment, and they disagreed only on whether Frierson's presence at a commitment hearing was required or whether he should be asked first if he wanted to attend. Frierson's counsel stated that Frierson should be brought to the courthouse in Boston or the judge should hold a hearing at FMC-Devens because the court should not commit Frierson without actually seeing him. The government was willing to bring Frierson to the courthouse, but suggested that first he should be asked if he wanted to attend the hearing. The district court decided to hold a hearing the following week to determine if it was "feasible and appropriate" to have Frierson present at his § 4245 hearing.

On December 17th, at the request of appointed counsel, Devens Clinical Psychologist Dr. Paul Anderson (whose case study of Frierson had been filed by the government in support of its motion) asked Frierson if he wanted to attend the hearing. Frierson indicated that he did. The government then notified the court that it was willing to bring Frierson to court. For unstated reasons, the court did not

-6-

request the government to do so.

Even though the statute plainly contemplates that ordinarily a prisoner will attend his or her own commitment hearing, and even though Frierson had said that he wanted to attend, and even though the government said it would bring him to the hearing, the district court nonetheless conducted a hearing on December 20th without Frierson being there. The ostensible subject was to determine if Frierson should attend his commitment hearing, but the hearing ended in a commitment order. The only witness at this hearing was Dr. Anderson. Anderson testified that Frierson indicated that he wanted to attend the hearing, though not in his orange jumpsuit. Anderson also testified that Frierson had filled out a form that requested a telephone call to counsel, though a Devens staff member, Carlos Quiles, wrote in an e-mail to a staff attorney at Devens that he, Quiles, had attempted to make the call but was unable to get Frierson's attention. Finally, Anderson testified that he believed that Frierson knew the purpose of the hearing; Anderson testified, as well, that Frierson thought the hearing would also address his status as Michael the Archangel.

After Anderson's testimony, the government stated that, since Frierson indicated he wished to attend the hearing, he had a right to do so under the statute and had a right to testify. Counsel for Frierson repeated that Frierson should be brought to the hearing because he had a statutory and constitutional right to be there and

-7-

said that in many other circuits the hearings are held at the medical center. He also pointed out that after Frierson had been committed earlier pursuant to § 4245 (at FMC-Lexington), Frierson decided to take his medication voluntarily (thus avoiding forcible medication). Counsel believed that, if Frierson were brought before a judge again, he would voluntarily take his medication. Rather than adjourning the hearing until Frierson could be present, the court directed counsel to contact Frierson at Devens during a recess and discuss with him the facts surrounding the e-mail. Counsel attempted to contact Frierson, but Frierson refused to come to the phone when asked to do so by Quiles. Upon the resumption of the hearing, the government informed the court that it changed its position because it felt that, as a result of the phone call, Frierson had been offered the opportunity to participate in the hearing and had refused. Frierson's counsel contested this assertion.

The district court then entered the order of commitment. The order read, in part:

> (3) Because of his present mental condition, it is not possible, without undue risk to his own safety and security, to have him brought into court for proceedings in his presence.

> (4) In these circumstances, applying the standard of due process, the court finds it appropriate to afford counsel appointed on his behalf to speak to the court on respondent's behalf, to present evidence on his behalf, to subpoena witnesses on his behalf, and to cross-examine witnesses on his behalf at this hearing. Counsel appointed

by the court to represent respondent did participate in the hearings of December 14 and 20, 1999, reserving rights to object to the proceedings. After considering the objections, the court overruled them.

(5) For reasons stated more fully on the record, the court finds that respondent at this time is not competent to be a witness and is not competent to make an informed decision. He has been offered an opportunity to assist his appointed attorney but has not responded to that opportunity. Moreover, I find that in his present condition it would be a futile gesture to purport to give him an opportunity to participate in a hearing at the Federal Medical Center in Devens, or elsewhere. He cannot become competent without resuming medication, and only then after weeks, at minimum. If he does resume medication and a material change bearing on his competence occurs, a request for further hearing in this court will be allowed.

Frierson appeals from this order.

### III.

The question presented is whether Frierson was provided with the requisite "opportunity" to be present at his § 4245 hearing.

First, we clear away a justification for the order which is clearly erroneous. There is no support for the district court's first "finding" that Frierson could not have been brought into court "without undue risk to his own safety and security." The government never took that position and indeed had offered to bring Frierson to the courthouse. Further, even were this so, it does not answer Frierson's argument that the court could have conducted the hearing at FMC-Devens.

-9-

We are told that this is routinely done in other circuits and could be done at Devens as well.[7]

Although the government had said that Frierson should be present for the commitment hearing, the government now attempts to defend the order on three grounds: first, that the case is moot; second, that Frierson rejected the opportunity to be at the hearing when, on December 20th, he was non-responsive to the guard's efforts to have him come to the phone to talk to counsel; and third, that there was no right to be physically present under the statute, only the opportunity to participate in the hearing in certain other ways.

The matter is not moot. Although Frierson has now been forcibly medicated, is taking his mediation, and is more lucid, the commitment order, with its attendant consequences described earlier, is still in place. Vitek forecloses the government's mootness argument, as does Washington v. Harper, 494 U.S. 210 (1990). Vitek rejected a mootness argument, even though the inmate was no longer at the mental hospital, because there was a very real threat he would be transferred

_____

[7] While no commitment hearing has yet taken place at Devens, we are told that if a judge decided to conduct a hearing there a suitable space, such as a conference room, could be provided. Some federal medical centers have courtrooms, which can be used for hearings, while others use conference rooms.

We are also told that there will be videoconferencing facilities operational between Devens and the U.S. Courthouse in Boston by the end of this year. The Fourth Circuit, in an uncontested § 4245 hearing, has approved the use of videoconferencing. See United States v. Baker, 45 F.3d 837, 848 (4th Cir. 1995). Whether such videoconferences suffice for all or some § 4245 hearings we leave to another day.

-10-

again. See Vitek, 445 U.S. at 486. Here, the inmate is still confined in the mental hospital.[8] In any event, as Harper holds, so long as the commitment order is in place, the matter is not moot. See Harper, 494 U.S. at 218-19.

Nor is the issue resolved by the phone call to the prison on December 20th and Frierson's non-responsiveness to the guard's efforts to get him to the phone. First, the hearing was largely concluded by the time the call was made, Anderson having testified. Second, Frierson was not told that this call was his opportunity to participate in the hearing (indeed, it was not); rather, Frierson had earlier said he wanted to attend any hearing. The district court properly rejected the government's request that it make a finding that the phone call constituted an opportunity for Frierson to participate in the hearing.

Finally, the government, on appeal, argues that the inmate's physical presence is not required by the statute at all in a commitment hearing.[9] All that the statute requires, according to the government,

_____

[8] That confinement means, inter alia, that his access to activities available to the general penal population is quite restricted.

[9] On appeal, the government says that it was within the district court's "supervisory authority" to conduct the commitment hearing in Frierson's absence. But here there was no evidence on which to conclude that unusual protective measures were needed. Indeed, usually such measures are taken only after the patient is observed by the court. See Suzuki v. Quisenberry, 411 F. Supp. 1113, 1130 (D. Haw. 1976). Some states, such as Minnesota, allow the court to "exclude or excuse a proposed patient who is seriously disruptive or who is incapable of comprehending and participating in the proceedings," but,

is the opportunity to participate.  For this proposition, the government relies on <u>United States</u> v. <u>Baker</u>, in which the Fourth Circuit found that videoconferencing commitment hearings satisfied constitutional due process.  <u>See</u> <u>United States</u> v. <u>Baker</u>, 45 F.3d 837, 848 (4th Cir. 1995).  But Frierson was not offered the opportunity to be present through videoconferencing.  Rather, the government's position before the trial court is more apposite: that Frierson had a statutory right to attend.

The statute reads: the person subject to the commitment motion "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 28 U.S.C.

---

as the language of the Minnesota statute makes clear, this can only be done when a person "is" disruptive or incapable, as observed by a judge during a hearing.  Minn. Stat. § 253B.08(5)(b); <u>cf.</u> <u>Matter of Lawaetz</u>, 728 F.2d 225, 227-28 (3d Cir. 1984) (finding constitutional a patient's exclusion when he had been "extremely disruptive" at a prior proceeding before the same judge during which he had been medicated, medical experts testified that the patient would be even more disruptive without his medication, and the district court preconditioned the patient's appearance on the taking of his medication).  Some courts have also allowed the temporary exclusion of a person from that portion of a hearing when testimony is given that may lead to emotional harm.  <u>See</u> <u>Coll</u> v. <u>Hyland</u>, 411 F. Supp. 905, 913 (D.N.J. 1976); <u>Schmidt</u> v. <u>Goddin</u>, 297 S.E.2d 701, 705-06 (Va. 1982).  <u>But see</u> <u>Matter of K.F.</u>, 582 A.2d 1294, 1294-95 (N.J. Super. Ct. App. Div. 1990).  A judge, of course, may resort to needed measures when a defendant disrupts the courtroom proceedings.  <u>See generally</u> <u>Illinois</u> v. <u>Allen</u>, 397 U.S. 337, 342-44 (1970).  There may well be extreme cases where alternative measures are needed to protect the safety of the participants to the hearing and that can be established without having the inmate before the judge.  But that is not this case and we leave any legal issues emerging from that fact pattern to future cases.

§ 4247(d).  The language makes clear that Congress contemplated that a person would be given the opportunity to be present. Cf. Specht v. Patterson, 386 U.S. 605, 610 (1967) ("Due process . . . requires that [the person] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.").[10]  Even Baker, which the government relies on, assumed that the prisoner had a right to be present.  See Baker, 45 F.3d at 843-44.

Although Frierson's due process rights may be of a different magnitude than the process due a criminal defendant, see Heller v. Doe, 509 U.S. 312, 325 (1993), the language Congress used in § 4247(d) that a prisoner has the right to testify and to confront witnesses rebuts the government's broad argument.  Cf. Harper, 494 U.S. at 235 (approving state policy that provided for "notice, the right to be present at an adversary hearing, and the right to present and cross-

---

[10]    Analogous state statutes are also instructive.  See, e.g., Conn. Gen. Stat. § 17a-498(a) ("right to be present at the hearing"); Fla. Stat. ch. 945.43(3) (assuming the presence of the inmate); 405 Ill. Comp. Stat. 5/3-806(a) ("respondent shall be present"); Ind. Code § 11-10-4-3(a)(3)(C) ("[t]he offender is entitled to appear in person"); Ky. Rev. Stat. Ann. § 202A.201(3)(b) ("the prisoner . . . [has] an opportunity to be heard in person"); Minn. Stat. § 253B.08(3) ("right to attend"); La. Rev. Stat. Ann. § 28:54(C) ("right to be present"); Me. Rev. Stat. Ann. tit. 34-B, § 3864(5)(C)(1) ("an opportunity to appear"); Mont. Code Ann. § 53-21-116 ("right to be present"); N.Y. Correct. Law § 402(5) (the judge "shall examine the alleged mentally ill person"); Ohio Rev. Code Ann. § 5120.17(B)(2) ("the inmate may be present");  Okla. Stat. tit. 43A, § 5-411(A)(5) ("right to be present"); S.C. Code Ann. § 44-17-570 ("right to be present").

examine witnesses"); <u>Vitek</u>, 445 U.S. at 494 (approving order that inmate must be given the opportunity "to be heard in person" and "to confront . . . witnesses"). Congress chose to give these rights to persons who, by definition, are thought to suffer from mental disorder or disease. There was no room to say that because Frierson was thought to suffer from a mental disorder or disease he did not have such rights. An inmate's presence at a commitment hearing will assist the judge in reaching the correct decision, may serve as a deterrent to false testimony, and, more generally, reaffirms the dignity of the individual. In this case, Frierson's presence before the court might have had the additional advantage of convincing him to take his medication voluntarily, as had occurred following his prior § 4245 hearing.

## IV.

Frierson either should have been brought to court, or, as is common elsewhere when judges feel that it is unsafe for the prisoner to be brought to the courthouse, the court should have traveled to the federal medical center. The order of commitment is <u>reversed</u> and <u>vacated</u>. If the government feels that Frierson should still be committed, it must file a new motion under § 4245.

So ordered.

-14-