# United States Court of Appeals
## For the First Circuit

---

No. 99-1829

STEVEN H. OKEN,

Petitioner, Appellant,

v.

WARDEN, MSP; WARDEN, MARYLAND CORRECTIONAL ADJUSTMENT CENTER,

Respondents, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Boudin, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Robert L. Sheketoff, with whom Sheketoff & Homan
were on brief, for appellant.

Joseph A. Wannemacher, Assistant Attorney General, with whom Andrew Ketterer, Attorney General, and Charles K. Leadbetter, Assistant Attorney General of Counsel, were on brief for appellees.

December 1, 2000

**LYNCH, Circuit Judge**.  This case presents an issue of first impression: whether state post-conviction review proceedings must comply with certain procedures under the Confrontation and Due Process clauses of the United States Constitution. Petitioner Steven Oken was sentenced in Maine to life imprisonment for murdering a Maine woman.  He was sentenced to death in Maryland for murdering a woman there (and was also convicted and sentenced to life imprisonment for murdering another woman there).  In imposing the death sentence on him in Maryland, the jury was told that he had been convicted of murder in Maine and sentenced to life imprisonment for that crime.

This case concerns one step in an apparent effort by Oken to undo the Maine murder conviction.  The Maine courts rejected his direct appeal of the conviction, and later his post-conviction attack which argued that he had been denied effective assistance of counsel when he entered his Alford plea to the Maine murder charge.  Oken argued he had been told by his counsel that his Maine plea could not be used in Maryland.  Oken then filed a federal habeas corpus petition. The essence of his argument is that his constitutional rights

-4-

were abridged during the post-conviction proceedings in the Maine courts when, imprisoned in Maryland, he was not brought back to Maine to be physically present to confront his former lawyer on the ineffective assistance issue, and because the other procedures used by Maine to protect his rights were inadequate.

Federal habeas review of state proceedings is narrow, particularly in the aftermath of the Antiterrorism and Effective Death Penalty Act ("AEDPA").[1]  The district court denied his habeas petition.  We affirm that decision.  Given that this case involves a man's life, we choose to affirm not for reasons having to do with the narrowness of federal habeas review, but because we believe that Oken's constitutional

---

[1]      See Pub. L. No. 104-132, 110 Stat. 1214 (1996) (amending 28 U.S.C. §§ 2244, 2253-55 and adding §§ 2261-66). Following the enactment of AEDPA, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

rights were not violated at all.  Accordingly, there is no basis for federal habeas relief.

The question before us is not whether the Maine state court was required to grant Oken an evidentiary hearing on his petition for post-conviction relief.  The state court did so.  It is also not whether the state court was required to permit Oken to testify as part of the evidentiary hearing. The state court did that as well.  Rather, the question is whether the Constitution compelled the state court to have Oken physically present in post-conviction proceedings: (1) during the examination of one of Oken's two former attorneys, whose assistance Oken was challenging as ineffective, when Oken was given the transcript of that testimony and consulted with his new counsel before the later cross-examination of that former attorney, and (2) to hear Oken's own testimony in person rather than by deposition testimony.

We hold there was no such constitutional requirement.  This is so even though the state post-conviction proceeding was the first occasion and opportunity for Oken to "confront" the witness, Oken's former attorney.  In this post-conviction context, we think the question turns on the due

process test of fundamental fairness, and the procedures used in the Maine post-conviction proceeding were fundamentally fair.

## I.

Steven Oken sexually assaulted, tortured, and then murdered Dawn Garvin in Baltimore County, Maryland on November 1, 1987. He sexually assaulted and murdered his sister-in-law, Patricia Hirt, also in Baltimore County, about two weeks later. Oken then traveled north to Kittery, Maine, where, on the evening of November 16, 1987, he killed Lori Ward, a clerk at a motel where he had stopped. Oken was taken into custody in Freeport, Maine, on the day after the Ward murder and charged with murder, armed robbery, and theft. Oken was later charged by the Maryland authorities with the two Baltimore County murders. Oken retained Baltimore attorney Benjamin Lipsitz to represent him on the Maryland and Maine charges, and also retained Portland, Maine attorney Richard Emerson to represent him on the Maine charges.

On April 21, 1989, Oken entered a conditional plea of guilty, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to all of the Maine charges. At that time, two murder

charges were pending against Oken in Maryland.  After his

conditional plea[2] on the Maine charges was accepted, Oken was

sentenced to concurrent terms of life imprisonment on the

Maine murder charge, twenty years on the robbery charge, and

five years on the theft charge.  Oken then appealed the denial

of his motion to suppress evidence obtained during a

warrantless search of Oken's Kittery hotel room.  That appeal

was denied, see State v. Oken, 569 A.2d 1218, 1221 (Me. 1990),

and the life sentence was also affirmed.[3]  Oken was

represented throughout the Maine criminal proceeding by

Lipsitz and Emerson, and Emerson continued to represent Oken

in his direct appeal of the denial of the suppression motion.

In October 1989, the Governors of Maine and Maryland

agreed to return Oken to Maryland to stand trial on the

Maryland charges, notwithstanding the Interstate Agreement on

Detainers ("IAD").  Oken was tried on the first Maryland

murder charge and found guilty.[4]  During the penalty phase of

---

[2]     The conditional plea allowed Oken to appeal the denial of his suppression motion.

[3]     Maine does not have the death penalty.

[4]     Oken was also convicted of first degree sexual assault, burglary, and use of a handgun during a violent crime.  He was

this proceeding, the jury, which had been informed of the Maine sentence, sentenced Oken to death.  Oken pled guilty to the second Maryland murder charge and was sentenced to life imprisonment for that crime.  His Maryland appeals were unsuccessful.  See Oken v. State, 612 A.2d 258 (Md. 1992), cert. denied, 507 U.S. 931 (1993).  Oken was represented throughout these Maryland proceedings by Lipsitz.

In 1991, while incarcerated in Maryland, Oken sought post-conviction relief from the Maine conviction in Maine Superior Court.  Oken alleged that he had received ineffective assistance of counsel from Lipsitz and Emerson in that these attorneys assured him that entering an Alford plea to the Maine charges would insulate him from a death sentence in Maryland since, under the IAD, any sentence imposed in Maine must be served before execution of a Maryland sentence.  Oken also claimed that his attorneys advised him that by entering such a plea, the conviction could not be considered during any Maryland proceedings, either at trial or during sentencing.  Additionally, Oken alleged that his counsel advised him that

_____

acquitted of robbery.

-9-

the maximum sentence he would receive for his <u>Alford</u> plea would be sixty years.  Oken further claimed that had he known that these assurances were inaccurate, he would not have given up his right to a jury trial in Maine by entering a plea. Oken was represented by court-appointed counsel different from the attorneys who had represented him previously in the Maine criminal proceedings.

In 1993, Oken moved in the Maine post-conviction proceedings for a writ of habeas corpus ad testificandum directing that he be transported from Maryland to Maine for the post-conviction hearing.  The court declined to issue the writ,[5] but did authorize depositions of Oken and others in Maryland.  Oken and Lipsitz, the Maryland attorney who represented him in Maine, were deposed in Maryland on June 23, 1993.  Oken was present and represented by counsel during Lipsitz's deposition.  Lipsitz was also present at Oken's

---

[5]     At the time, Oken was under the legal and physical custody of the State of Maryland.  In his brief to this court, Oken does not indicate the source of authority that would have empowered the Maine post-conviction court to order that Oken be produced at the hearing.

deposition.  Oken's father, mother, and sister were also deposed in Maryland, but not in Oken's presence.[6]

In June 1995, the court denied Oken's renewed motion seeking a writ of habeas corpus ad testificandum.  An evidentiary hearing was held in Maine in Oken's absence, and over his objection, on June 7, 1995.  Oken was represented by counsel at the hearing, and the court ordered that a transcript of the hearing be prepared.  At the hearing, the court heard testimony from three witnesses: the Maine attorney (Emerson) who represented Oken when he entered the Alford plea; Dr. Susan Righthand of the Maine Forensic Service; and Oken's mother.  Transcripts of the depositions of Oken, his sister, and his Maryland attorney (Lipsitz) were admitted into evidence, as were the affidavits of Thomas Sanders, another Maryland attorney, and Dr. Henry Payson, a psychiatric expert retained by Oken.

After traveling to Maryland to consult with Oken, Oken's post-conviction attorney recalled Emerson for further cross-examination at a second hearing on April 2, 1996.  This

---

[6]    Oken's mother and sister had been present when Oken discussed with his attorneys the possibility of entering a guilty plea to the Maine charges.

hearing was also held in Oken's absence and over his objection. Again, a transcript was made of the hearing. After reviewing the transcripts and evidence with his post-conviction attorney, Oken was deposed again in Maryland on June 17, 1996. Oken's counsel and Oken personally then submitted a second round of briefs and other materials to the court.

The superior court denied the petition July 15, 1997. First, characterizing Oken's former Maine attorney as a "credible, competent, and compelling witness to the events surrounding Oken's plea," the court found that Oken's former attorneys did not guarantee Oken that he would serve his entire sentence in Maine before being returned to Maryland. The court also found that Oken was informed of the risk that the IAD would be circumvented by an executive agreement, thus allowing Oken to be returned to Maryland for trial and execution of any sentence imposed after trial. Second, the court rejected Oken's allegation that his attorneys ever advised him that his Alford plea to the Maine charges could not be considered in any subsequent Maryland proceedings, either at trial or sentencing. Rather, the court found that

-12-

the advice to enter an <u>Alford</u> plea was a legitimate attempt to minimize the impact of a Maine conviction on subsequent proceedings in Maryland. Third, the court did not find credible Oken's contention that his counsel had promised him that he would receive a sentence in Maine not exceeding sixty years. Moreover, the court concluded that Oken would not have insisted on going to trial in the absence of the alleged erroneous advice from counsel.

Oken then filed a notice of appeal in the Maine Supreme Judicial Court ("SJC"). The SJC granted a certificate of probable cause permitting Oken to proceed with an appeal on the sole issue of his right to be present at the post-conviction evidentiary hearing. In denying Oken's appeal, the SJC assumed arguendo that the Confrontation Clause of the Sixth Amendment applied to a post-conviction review proceeding but concluded that Oken's Sixth Amendment rights were not violated since, inter alia, he was permitted to consult with his attorney, to review the hearing transcripts of the witnesses in Maine, and, through counsel, to recall and further cross-examine those witnesses. <u>See</u> <u>Oken</u> v. <u>State</u>, 716 A.2d 1007, 1010-11 (Me. 1998). The court also held that

-13-

Oken's rights under the Due Process Clause were not violated

since the procedures used in the post-conviction hearing were

fundamentally fair.  <u>Id.</u> at 1011.[7]  Oken's petition for writ

of certiorari was denied by the United States Supreme Court.

<u>See</u> <u>Oken</u> v. <u>Maine</u>, 525 U.S. 1004 (1998).[8]

Oken, appearing pro se, filed this petition for writ

of habeas corpus in the United States District Court for the

District of Maine on September 24, 1998.  The petition was

referred to a magistrate judge who, on March 17, 1999, issued

a decision recommending that the petition be denied without an

---

[7]    The SJC also noted that while Oken had disavowed a procedural
due process claim, such a claim would fail. <u>See</u> <u>id.</u> at 1011 n.10.

[8]    Oken also sought post-conviction relief in Maryland, raising
some of the same ineffective assistance of counsel claims raised in the
Maine post-conviction proceedings, namely, the alleged promises made to
Oken in connection with his Maine <u>Alford</u> plea. The Maryland courts
rejected those claims.  <u>See</u> <u>Oken</u> v. <u>State</u>, 681 A.2d 30, 49-51 (Md.
1996), <u>cert. denied</u>, 519 U.S. 1079 (1997).  Specifically, the judge in
the Maryland post-conviction proceeding saw and heard the witnesses
(including Oken) testify, assessed their credibility, and believed the
testimony of trial counsel (Lipsitz) over that of Oken with respect to
Oken's claim of promises made to him concerning the effect of his
<u>Alford</u> plea on any Maryland proceedings. <u>See</u> <u>id.</u> at 51.  Oken filed a
federal post-conviction petition in the United States District Court
for the District of Maryland.  That petition has been denied, <u>see</u> <u>Oken</u>
v. <u>Nuth</u>, 64 F. Supp. 2d 488 (D. Md. 1999), and that denial has been
affirmed on appeal by the Fourth Circuit, <u>see</u> <u>Oken</u> v. <u>Corcoran</u>, 220
F.3d 259, 270 (4th Cir. 2000) (finding no ineffective assistance of
counsel as to Oken's <u>Alford</u> plea).

-14-

evidentiary hearing.[9]  Oken filed objections to the

recommended decision.

On June 8, 1999, the district court issued an order

adopting the magistrate judge's recommended decision and

denying Oken's habeas petition.  Oken filed a notice of

appeal.  The district court issued a certificate of

appealability, which has been interpreted by this court to

embrace a Confrontation Clause and Due Process Clause

challenge to the Maine state court's decision to conduct an

evidentiary hearing in Oken's absence on  Oken's post-

conviction petition.  Counsel was appointed to represent Oken.

**II.**

The question before us is a narrow one: is there

anything in the U.S. Constitution which compels a state in its

post-conviction proceedings to require the presence of the

prisoner at hearings under these circumstances?   The SJC

judged the question largely in the terms described in Snyder

v. Massachusetts, 291 U.S. 97 (1934), overruled on other

---

[9]    The magistrate judge concluded that the decision of the SJC
was neither contrary to clearly established federal law nor involved an
unreasonable application of any such law, thus precluding federal
habeas relief under 28 U.S.C. § 2254(d)(1).

grounds, Malloy v. Hogan, 378 U.S. 1 (1964).[10]  In Snyder, which was on appeal, the Court rejected the defendant's claim that the Due Process Clause prohibited his exclusion from a view of the crime scene by the jury.  See id. at 116-18.  The test was "whether in the particular conditions exhibited by the record the enforced absence of the defendant is so flagrantly unjust that the Constitution of the United States steps in to forbid it."  Id. at 115.  We conclude here that nothing in the Constitution requires a standard more favorable than that of fundamental fairness to Oken in the state post-conviction proceeding.

## A.   Confrontation Clause and Sixth Amendment Rights

Oken argues that the Confrontation Clause of the Sixth Amendment guaranteed his right to be present at the Maine state post-conviction hearing.[11]  We disagree.  Oken did

---

[10]     In Malloy, the Court rejected the proposition, discussed in dicta in Snyder, that the Fifth Amendment privilege against self-incrimination did not apply to the States.  See Malloy, 378 U.S. at 2 n.1.  In Duncan v. Louisiana, 391 U.S. 145, 154-55 (1968), the Court rejected other dicta in Snyder asserting that the right to a jury trial in serious criminal cases may be dispensed with by the States.

[11]     Oken argues that his right to be present is based on both the Confrontation and Due Process clauses but does not engage in a separate analysis under each of those clauses.  Because of distinctions between the Confrontation and Due Process clauses, we will discuss those constitutional arguments separately.

not have a constitutional right under these circumstances to testify in person or to confront attorney Emerson in person.

1.  Right to Confront Emerson

The Sixth Amendment provides that in all criminal prosecutions, the accused has the right "to be confronted with the witnesses against him."  U.S. Const. amend VI.  A "primary interest secured [by the Confrontation Clause] is the right of cross-examination."  Kentucky v. Stincer, 482 U.S. 730, 736 (1987) (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)).  A defendant's right of confrontation, however, goes beyond the right to cross examine, and also includes the right to confront one's accusers face-to-face. See Coy v. Iowa, 487 U.S. 1012, 1019-20 (1988); Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987). A witness "'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.  He can now understand what sort of human being that man is.'"  Coy, 487 U.S. at 1019 (quoting Z. Chafee, The Blessings of Liberty 35 (1956)). Thus, the right to face-to-face confrontation, like the right of cross-examination, is critical for ensuring "the integrity of the fact-finding process."  Id. at 1020 (quoting Stincer, 482 U.S. at 736).    Oken argues that his exclusion from the Maine post-conviction proceeding implicates his rights under the Confrontation Clause.  However, Oken points to no authority (and we likewise find

-17-

none) that directly supports the extension to state (or federal) post-conviction proceedings of a criminal defendant's constitutional right to personally confront one's accusers.  Cf. United States v. Hayman, 342 U.S. 205, 222-23 (1952) ("Unlike the criminal trial where the guilt of the defendant is in issue and his presence is required by the Sixth Amendment, a proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction. Whether the prisoner should be produced depends upon the issues raised by the particular case."); Burgess v. King, 130 F.2d 761, 762 (8th Cir. 1942) ("The constitutional right of an accused to be confronted with the witnesses against him is applicable only to criminal proceedings, and hence, it can not be claimed that the petitioner had the right of confrontation [in post-conviction proceedings]."); Larry W. Yackle, Postconviction Remedies § 136, at 514 (1981 and Supp. 2000) ("The persistent argument that habeas corpus petitioners have a constitutional right to be present at proceedings in federal court has been roundly rejected."); cf. also Price v. Johnson, 334 U.S. 266, 285-86 (1948) (no constitutional right of habeas petitioner to argue case before an appellate court or be present in the courtroom; contrasting this with the "constitutional prerogative of being present in person at each significant stage of a felony prosecution"), overruled on other grounds by McCleskey v. Zant, 499 U.S. 467 (1991).  State courts have

-18-

also rejected the argument that the Confrontation Clause applies to state post-conviction proceedings.  See Leisure v. State, 828 S.W.2d 872, 878 (Mo. 1998); Little v. Rhay, 413 P.2d 15, 19-20 (Wash. 1966) ("use of affidavits in habeas corpus proceedings is not improper").

Oken maintains that the Supreme Court's decision in Kentucky v. Stincer, 482 U.S. 730 (1987), compels a different result here.  We disagree.  In Stincer, the Court held that the exclusion of a defendant in a sexual abuse prosecution from a hearing to determine the competency of two child witnesses did not violate his rights under the Confrontation or Due Process clauses.  The Court stated that the question under the Confrontation Clause was "whether excluding the defendant from the [competency] hearing interferes with his opportunity for effective cross-examination."  Id. at 740.  The Court concluded that because the defendant had the opportunity for full and effective cross-examination of the two witnesses during trial, and because the competency hearing was limited to matters unrelated to the basic issues at trial, the defendant's Confrontation Clause rights had not been violated. See id. at 740-44.  Stincer, however, concerned a defendant's Confrontation Clause rights at trial, and Oken offers no

authority for extending those rights to state post-conviction proceedings.  Such proceedings have consistently been deemed to be civil in nature.  See, e.g., Hilton v. Braunskill, 481 U.S. 770, 775-76 (1987); Browder v. Director, Illinois Dept. of Corrections, 434 U.S. 257, 269 (1978); Fay v. Noia, 372 U.S. 391, 423-24 (1963).  Indeed, the Court has referred to the right of confrontation as basically a "trial right." See Stincer, 482 U.S. at 738 n.9 (quoting Barber v. Page, 390 U.S. 719, 725 (1968)).[12]  Moreover, since Stincer, at least one court of appeals has held that the Confrontation Clause does not apply to hearings on new trial motions.  See United States v. Boyd, 131 F.3d 951, 954 (11th Cir. 1997) ("While the evidentiary hearing may have resulted in a new trial for [the defendant], nothing said or done at the evidentiary hearing could have affected the reliability of [his] original trial,

---

[12]     Similarly, other fundamental trial rights, such as a criminal defendant's Sixth Amendment right to counsel, see Gideon v. Wainwright, 372 U.S. 335 (1963), do not appear to be mandated by the Constitution in collateral habeas proceedings, see Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (no right to counsel in state post-conviction proceedings).  But see Coleman v. Thompson 501 U.S. 722, 755-56 (1991) (recognizing that there might be a right to counsel on state habeas where it is the first time a petitioner can raise a particular claim, such as a claim of ineffective assistance of trial counsel).

which had been concluded."). We thus conclude that the Confrontation Clause does not apply to state post-conviction proceedings.

## 2. Right to Testify in Person at the Post-Conviction Hearing

As Oken's claim that he was not present at the post-conviction hearing also encompasses the claim that he was not permitted to testify in person, we briefly address that aspect of his claim. The Sixth Amendment also provides that the accused in a criminal trial has the right to "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. This includes not only a defendant's right to call witnesses in his favor but also his "right to testify himself, should he decide it is in his favor to do so." Rock v. Arkansas, 483 U.S. 44, 52 (1987).[13] Indeed, in many cases the defendant himself may be the most important witness for the defense. Id. However, for the same reasons that the Confrontation Clause does not apply to post-conviction proceedings, we also

---

[13] A criminal defendant's right to testify on his own behalf is also based on the Fifth Amendment privilege against self-incrimination and on the Due Process Clause. See id. at 51.

conclude that a defendant does not have a constitutional right to testify in person at post-conviction proceedings.[14]

## B.  Due Process Clause

Oken also asserts that his absence from the state post-conviction hearing violated his rights under the Due Process Clause.

Maine, as respondent, takes the position that there is some constitutional protection for inmates required in state post-conviction proceedings.  We thus need not address the complicated series of questions that would arise if Maine had taken a different position here.[15]

Oken argues that the SJC erred in not applying the

---

[14]  Had Oken been prohibited from being present at an important stage of his criminal proceeding, we do not doubt that this would have violated his constitutional rights. See, e.g., Rock, supra. Indeed, we have held that even in certain non-criminal but non-collateral proceedings where an individual's liberty is at stake, such as the involuntary commitment of an inmate, the right to be present is grounded in constitutional concerns. See United States v. Frierson, 208 F.3d 282, 288 (1st Cir. 2000) (inmate's statutory right to be present at commitment hearing grounded in constitutional due process).

[15]  Although it has not been decided conclusively, existing authority suggests that state post-conviction proceedings must comport with the fundamental fairness mandated by the Due Process Clause. See Finley, 481 U.S. at 557.

Stincer due process standard to his exclusion from the post-conviction hearing on his ineffective assistance claim.  Under Stincer, a defendant "is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  Stincer, 482 U.S. at 745.[16]  The short answer is that post-conviction collateral attack proceedings are not "criminal proceedings" at all.  So, by its own terms, Stincer is not applicable to the Maine proceeding at issue here.

Decisions under the federal statutes providing for review of both state and federal convictions also undercut Oken's assertion of a constitutional right to be physically present during the Maine post-conviction hearing.  To be sure, the writ of habeas corpus traditionally directed the person with custody over the petitioner to produce him before the court so that it could inquire into the

---

[16]     While the Confrontation Clause of the Sixth Amendment encompasses testimonial aspects of a criminal proceeding, see supra, the Due Process Clause applies more broadly to testimonial as well as non-testimonial aspects of such proceeding. See Stincer, 482 U.S. at 745 ("[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'") (quoting Snyder, 291 U.S. at 105-06).

-23-

legality of the detention.  See Developments in the Law -- Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1189 (1970); see 28 U.S.C. § 2243; Walker v. Johnson, 312 U.S. 275, 285-86 (1941).  But courts have upheld the validity of "paper hearings" even under § 2254. Livingston v. Johnson, 107 F.3d 297, 303 (5th Cir. 1997) (although some of petitioner's witnesses "appeared" only on paper, state court afforded him full and fair hearing within the meaning of pre-AEDPA § 2254(d)); Sawyers v. Collins, 986 F.2d 1493, 1504-05 (5th Cir. 1993) (assessment of credibility of witnesses based on affidavits afforded petitioner a full and fair hearing).

Cases decided under the post-conviction statute for federal prisoners demonstrate even more clearly the absence of an absolute constitutional right of the prisoner to be physically present at post-conviction proceedings.  Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  Id.  However, the statute also states that "[a] court may entertain and determine such motion without requiring the production of the prisoner at the

-24-

hearing." Id. The Supreme Court has repeatedly held that notice and the opportunity to present evidence in a § 2255 proceeding does not always require the physical presence of the petitioner. In Machibroda v. United States, 368 U.S. 487 (1962), the Court reversed the district court's denial without a hearing of a petitioner's § 2255 claim where there were controverted facts as to the voluntariness of the petitioner's guilty plea. Id. at 494. The Court, however, instructed that on remand the district court could determine whether the petition could be appropriately disposed of without the presence of the petitioner at the hearing. Id. at 495-96; see also Sanders v. United States, 373 U.S. 1, 20-21 ("Not every colorable allegation entitles a federal prisoner to a trip to the sentencing court"; it is within district court's discretion on remand to determine whether petitioner's failure to claim mental incompetency in his first § 2255 motion was an abuse of the motion remedy disentitling him to a hearing on the merits).

Petitioner's reliance on Hayman, supra, is misplaced. In Hayman, a § 2255 case alleging ineffective assistance of counsel, the Court held that the district court

erred in making findings on controverted facts relating to the prisoner's own knowledge without notice to the prisoner and without him being present. See 342 U.S. at 220. The Court, however, based its holding on the federal habeas statute, and not on any constitutional requirement. Id. at 220-21. Moreover, as discussed above, the Court rejected any notion of a per se right to be present under § 2255 in subsequent decisions such as Machibroda and Sanders.

Nevertheless, we do assume that due process requirements of fundamental fairness apply to state post-conviction proceedings, and to that issue we now turn. Cf. Ake v. Oklahoma, 470 U.S. 68, 76-77 (1985) ("the Fourteenth Amendment's due process guarantee of fundamental fairness" requires the state to take steps to assure that criminal defendants have a fair opportunity to present their defense); Ford v. Wainwright 477 U.S. 399, 424 (1986) (Powell, J., concurring in part and concurring in the judgment) (competency determinations prior to execution must comport with fundamental fairness required by the Due Process Clause); Snyder, 291 U.S. at 116 ("Due Process of law requires that the proceedings shall be fair, but fairness is a relative, not absolute concept.").

-26-

There was nothing fundamentally unfair about the procedures used here by the Maine post-conviction court. First, the procedures enabled Oken to assist his post-conviction counsel in examining the two attorneys (Lipsitz and Emerson) who had represented him in the Maine murder case. Indeed, as to Lipsitz, Oken was present for the examination by deposition in Maryland. Second, nothing about the procedures significantly undercut Oken's ability to assist his counsel. Oken had the benefit of reading the transcript of the first hearing before Emerson was recalled for further cross-examination. As the SJC pointed out, this was more time to prepare cross-examination than would have otherwise been available to Oken at a live hearing. Also, Oken had available transcripts of Emerson's testimony on each day of the hearing in making his final submissions to the court. Third, Oken was able to testify himself by deposition in response to the transcript of Emerson's testimony. Fourth, nothing about the procedures involved was one-sided or biased so as to raise questions about the integrity or truth-finding function of the process followed. Indeed, Oken was represented by counsel at every stage of the proceeding. Fifth, the detriment to Oken

-27-

from these procedures was not so momentous as to be fundamentally unfair. Oken says he was denied the ability to look attorney Emerson in the eye, that he lost the spontaneity and thus the impact of immediate cross-examination, and that he lost the ability to have the state court determine his credibility by viewing him in person. In the trial setting, when witnesses are being examined on factual matters, these detriments to a defendant are weighed differently under the Confrontation Clause, see Coy, 487 U.S. at 1019-20 (Confrontation Clause protects defendant's right to physically face those who testify against him and the right to conduct cross-examination), the Compulsory Process Clause, see Rock, 483 U.S. at 52 (right to call witnesses to testify, including the defendant himself), the Fifth Amendment privilege against self-incrimination, see id. ("opportunity to testify is . . . a necessary corollary to the Fifth Amendment's guarantee against compelled testimony"), and the Due Process Clause, see Stincer, 482 U.S. at 745 (defendant "is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). These detriments deserve

-28-

less weight in the post-conviction context, not because they are unimportant, but because there the proceeding is collateral and a defendant does not stand accused and presumed innocent. Here, Oken has been found guilty, and the questions on the Maine post-conviction challenge do not go to guilt or innocence. Indeed, Oken makes no claim of actual innocence here. Cf. Schlup v. Delo, 513 U.S. 298, 324-25 (1995) ("[T]he individual interest in avoiding injustice is most compelling in the context of actual innocence. The quintessential miscarriage of justice is the execution of a person who is entirely innocent.").[17]

In sum, the procedures used were not fundamentally unfair and, therefore, did not violate Oken's constitutional rights in the Maine post-conviction proceeding. There may be situations, on other facts, where fundamental fairness

---

[17] To the extent relevant, we also note the interests of the government on the other side. Cf. Ake, 470 U.S. at 77 (balancing factors in determining whether to require a state to provide an indigent defendant with access to competent psychiatric assistance in preparing the defense). Transporting Oken to Maine would involve delay. It would pose some security risk of escape of a three-time murderer. It would also involve added expense. Moreover, the potential for false claims and deliberate delay in this context is obviously enormous. Cf. Ford, 477 U.S. at 429 (O'Connor, J., concurring in part and dissenting in part) (discussing why the Constitution does not mandate "the full panoply of trial-type procedures" to determine whether prisoners facing execution are sane).

requires a prisoner's physical presence at state post-conviction proceedings on an issue which could not have been raised a trial, but this is not one of them.

### III.

The decision of the district court denying Oken's habeas corpus petition is affirmed.