United States Court of Appeals,

Eleventh Circuit.

Nos. 94-8074, 94-8612, 95-9167 and 95-9187.

UNITED STATES of America, Plaintiff-Appellee,

v.

Calvin Maurice BOYD, a.k.a., "Mee Tee";  Pinkney Clowers, III, a.k.a. "Boo", a.k.a. "Dog", a.k.a "Cameiko", Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Calvin M. BOYD, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Pinkney CLOWERS, III, a.k.a. Dog a.k.a. Boo, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Calvin BOYD, a.k.a. Mee Tee, Defendant-Appellant.

Dec. 18, 1997.

Appeals from the United States District Court for the Middle District of Georgia. (Nos. 5:9200082-CR-MAC(WDO), 5:92-CR-82-2(WDO), Wilbur D. Owens, Jr., Judge.

Before COX and BARKETT, Circuit Judges, and HUNT[*], District Judge.

PER CURIAM:

Calvin M. Boyd and Pinkney Clowers III appeal their convictions and sentences on various

---

[*]Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

charges relating to a crack cocaine conspiracy in Macon, Georgia. For the reasons stated below, we vacate Clowers' drug conspiracy conviction and sentence and remand for resentencing; we affirm in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

After the breakup of the Macon, Georgia drug ring of which he was a member, Pinkney Clowers decided to go into business for himself. In early 1990 Clowers formed a partnership with Arleigh Carrington, one of the leaders of the old drug ring. The two bought cocaine powder from suppliers in Atlanta and Miami and "cooked" the powder into crack for sale. At first Clowers and Carrington sold the crack themselves; when their profits grew they recruited other people, including Calvin Boyd, to do the street-level dealing and to commit robberies to finance their drug operations. In addition to selling crack on the street, Boyd served as the group's "enforcer." In November 1991 Clowers was arrested after a consent search of his automobile following a traffic stop revealed a revolver, the end of a smoked marijuana cigarette, a ledger tracking drug transactions, and a bag containing thousands of dollars in cash. The other members of the group were arrested later.

A grand jury returned a twenty-count indictment against the members of the conspiracy. Boyd and Clowers were tried jointly,[1] and a jury convicted each of them on (a) one count of conspiring to distribute cocaine base (Count 1) in violation of 21 U.S.C. § 846; (b) one count of conspiring to interfere with commerce by threats or violence (Count 2) in violation of 18 U.S.C. § 951 (Hobbs Act); and (c) one count of conspiring to use or carry firearms during/in relation to drug trafficking crimes or crimes of violence (Count 3) in violation of 18 U.S.C. § 924(c). Clowers also was convicted on one count of operating a continuing criminal enterprise (CCE) (Count 18), in

---

[1]Four other members of the conspiracy either pleaded guilty or were tried separately. Codefendant Richard Glover does not appeal his conviction.

violation of 21 U.S.C. § 848.  Boyd and Clowers filed timely notices of appeal.

During the pendency of their original appeals, Boyd and Clowers also moved for new trials. The district court ordered an evidentiary hearing on the motions.  At the time of this activity, Boyd was incarcerated at the United States Prison in Florence, Colorado.  Boyd's counsel notified him that he would not be permitted to attend the evidentiary hearing.  In response, Boyd filed *pro se* with this court an emergency motion to be present at the evidentiary hearing.  He also filed a *pro se* "Motion to Proceed *Pro Se,*" claiming that he would have no choice but to represent himself at the evidentiary hearing should we deny his earlier emergency motion.  This court denied both motions.

During Boyd's *pro se* activity with this court, his attorney filed a motion in the district court to require Boyd's presence at the evidentiary hearing.  The district court denied this motion, relying in part on its conclusion that no evidence had been presented which demonstrated that Boyd had any relevant information known only to him.  Boyd then filed with the district court a *pro se* motion to waive counsel and proceed *pro se* at the evidentiary hearing only.  The district court held that Boyd had waived his right to proceed *pro se* by filing his motion for new trial through counsel, and alternatively that Boyd improperly sought hybrid representation and was filing the motion solely for the purpose of evading the court's denial of his earlier motion to be present.  The district court eventually held the evidentiary hearing without Boyd's presence, and denied Boyd and Clowers' motions for new trial;  Boyd and Clowers appealed from this ruling as well.  However, in the interim a panel of this court already had heard oral argument on Boyd and Clowers' original appeals.  In addition, the Supreme Court had decided *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996), the holding of which is relevant to Clowers' appeal.  We decided to rehear Boyd and Clowers' original appeals along with their new appeals, and ordered supplemental briefing by the parties on the *Rutledge* issue.

## II. ISSUES ON APPEAL

Boyd and Clowers each raise numerous issues on appeal. We address only three here:[2] (1) whether Boyd's Fifth and Sixth Amendment rights were violated by his exclusion from the evidentiary hearing on his motion for new trial; (2) whether the recent holding in *Rutledge v. United States,* 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) requires us to vacate Clowers' conviction of conspiring to distribute cocaine base or his CCE conviction; and (3) whether Boyd and Clowers were denied a fair trial due to statements made by the prosecutor in her closing argument.

## III. DISCUSSION

A. *Boyd's Exclusion from the Evidentiary Hearing*

Boyd argues that his exclusion from the evidentiary hearing on his motion for new trial violated his constitutional right of presence. A number of older decisions squarely address this question, stating that a criminal defendant has no right to be present at a hearing on a motion for new trial. *See, e.g., Council v. Clemmer,* 177 F.2d 22, 24-25 (D.C.Cir.1949); *United States v. Lynch,* 132 F.2d 111, 113 (3d Cir.1942); *Alexis v. United States,* 129 F. 60, 64-65 (5th Cir.1904); *see also* L.S. Rogers, Annotation, *Absence of Convicted Defendant During Hearing or Argument of Motion for New Trial or in Arrest of Judgment,* 69 A.L.R.2d 835 (1960 & Supp.1997) (collecting cases). We write today to address the subject in light of more recent Supreme Court authority.

A defendant's constitutional right to presence largely stems from the Confrontation Clause of the Sixth Amendment, *see, e.g., United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985), but the Supreme Court also has recognized that some aspects of this

---

[2]All other issues raised are without merit and do not warrant discussion. *See* 11TH CIR. R. 36-1.

right are protected by due process, *see Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). For the reasons stated below, we hold that the district court did not violate Boyd's Confrontation Clause or due process rights in denying his request to be present at the evidentiary hearing.[3]

### 1. Sixth Amendment/Confrontation Clause

The Supreme Court on numerous occasions has referred to a defendant's Confrontation Clause right to be present as a "trial right," *see Stincer,* 482 U.S. at 738 n. 9, 107 S.Ct. at 2663 n. 9 (collecting cases), recognizing that the right is designed to promote reliability at trial, *see, e.g., id.* at 737, 107 S.Ct. at 2663. While the evidentiary hearing may have resulted in a *new* trial for Boyd, nothing said or done at the evidentiary hearing could have affected the reliability of Boyd's *original*

---

[3]Fed R.Crim. P. 43 mandates that a defendant "shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence." FED.R.CRIM.P. 43. It is clear that Rule 43 did not entitle Boyd to attend the evidentiary hearing: The rule does not mention post-trial proceedings; and in fact the Advisory Committee's note to the original enactment notes that the principle behind the rule "does not apply to hearings on motions made prior to or after trial." FED.R.CRIM.P. 43 advisory committee's note (1944 Adoption).

Congress' intent in enacting Rule 43 was to codify then-existing case law regarding a criminal defendant's right to be present, and the rule has been amended over time to reflect changes in the law. *See* FED.R.CRIM.P. 43 advisory committee's note (1944 Adoption, 1974 Amendment, 1977 Enactment, 1995 Amendments). Other circuit courts of appeals have concluded that Rule 43's protections are broader than those afforded both by the Sixth Amendment and by due process, and thus if the rule does not require a defendant's presence at a given proceeding, neither does the Constitution. *See United States v. Washington,* 705 F.2d 489, 497 n. 5 (D.C.Cir.1983); *United States v. Christopher,* 700 F.2d 1253, 1262 (9th Cir.1983); *United States v. Alessandrello,* 637 F.2d 131, 138 (3d Cir.1980); *United States v. Brown,* 571 F.2d 980, 986-87 (6th Cir.1978); *see also Hall v. Wainwright,* 733 F.2d 766, 786 n. 3 (11th Cir.1984) (Hill, J., dissenting) (advancing same proposition); *cf. United States v. Alikpo,* 944 F.2d 206, 208 (5th Cir.1991) (stating that Rule 43 incorporates Confrontation Clause rights; due process not addressed). However, while the reasoning behind these decisions is instructive, the issue of the possible overlap between the constitutional right to be present and that under Rule 43 is not properly before us, and we decline to decide it here.

trial, which had been concluded. The evidentiary hearing had no "direct relationship with [Boyd's] trial," *id.* at 740, 107 S.Ct. at 2664, and his exclusion from the hearing did not "interfere[ ] with his opportunity for effective cross-examination" of the trial witnesses, *see id.* As such, Boyd's exclusion from the hearing did not violate his Confrontation Clause right to be present.

### 2. Due Process Clause

In addition to acknowledging a criminal defendant's Confrontation Clause right to be present at all stages of his trial, the Supreme Court has recognized a seemingly broader due process right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *See Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667. The evidentiary hearing in Boyd's case focused on (a) whether the government had made a deal with Curtis Francis, a government witness, and (b) whether the government knowingly had allowed Francis to give allegedly perjured testimony. Boyd had no personal knowledge or relevant information regarding either the government's alleged negotiations with Francis or the truth of Francis' testimony. He has made no argument, except in the form of a conclusory statement, that he could have assisted either his counsel or the court in a way that would have resulted in a more reliable hearing. We conclude that Boyd's presence at the hearing would have been "useless, or the benefit but a shadow," *Snyder v. Massachusetts,* 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934), and thus his exclusion did not violate his due process rights.

B. *Clowers' Conspiracy and CCE Convictions*

Clowers was convicted both of conspiring to distribute cocaine base in violation of 21 U.S.C. § 846, and of operating a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848. The Supreme Court recently ruled that a § 846 drug conspiracy is a lesser included offense of operating a CCE when the "in concert" element of the CCE conviction rests on the same agreement

as the "agreement" underlying the conspiracy conviction. *See Rutledge v. United States,* 517 U.S. 292, ----, 116 S.Ct. 1241, 1247, 134 L.Ed.2d 419 (1996). Clowers contends, and the government agrees, that the CCE charged in Count 18 of the indictment rests on the same agreement as the conspiracy charged in Count 1. Clowers argues that *Rutledge* requires us to vacate both of his convictions and sentences, while the government asserts that the conviction and sentence of the lesser included offense should be vacated.

Clowers misreads *Rutledge,* which requires that only "one of the convictions ... must be vacated." *Rutledge,* 517 U.S. at ----, 116 S.Ct. at 1250-51 (quoting *Ball v. United States,* 470 U.S. 856, 864, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) (per curiam)) (alterations in original omitted). The proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and the sentence of the lesser included offense. *See, e.g., United States v. Jones,* 918 F.2d 909, 911 (11th Cir.1990) (per curiam). Therefore, we vacate Clowers' conviction on the drug conspiracy charge (Count 1), vacate his sentences on all counts, and remand for resentencing on all counts other than Count 1. *See United States v. Rosen,* 764 F.2d 763, 767 (11th Cir.1985) ("Multiple count convictions present the trial judge with the need for a sentencing scheme which takes into consideration the total offense characteristics of a defendant's behavior. When that scheme is disrupted because it has incorporated an illegal sentence, it is appropriate that the entire case be remanded for sentencing.").

C. *Prosecutor's Closing Argument in Rebuttal*

Boyd and Clowers both argue that they were denied a fair trial by inflammatory and prejudicial remarks made by the prosecutor during her closing argument in rebuttal. The contested remarks are:

> We, right here in this community, in this land, are involved in the most pernicious war that we will ever be involved in and it is not Desert Storm and it is not Bosnia and it is

the second war that has ever been fought on our land and it is fought on our streets, it is fought in our schools and it has been fought in this Courtroom for the past week, and that is the war on drugs. And make no mistake, ladies and gentlemen, it is a war. If you doubt that, you look at these guns, you look at Leroy Sams who could've been killed, you look at Sara Thomas' children who almost died, and you look at the blood of Reginald Bembry, who was a victim of that war. And unless we win the war, we will all be doomed. These people, as well as everyone listed in that indictment, are the enemy and they are the enemy of every man, woman, and child in this country because they don't care what they do. They don't care [sic] the pain and the misery and the hurt and the death that they cause because they only want one thing, and that's money for themselves.

(R.11 at 1215).

Remarks made in the course of a prosecutor's closing argument will warrant reversal if the challenged remarks are (1) improper and (2) prejudicial to a substantial right of the defendant. *See United States v. Blakey,* 14 F.3d 1557, 1560 (11th Cir.1994). As the government admits in its brief, the comments quoted above are improper. *See United States v. Beasley,* 2 F.3d 1551, 1560 (11th Cir.1993) (similar remarks held improper).[4] However, the government argues: (1) that these remarks did not prejudice Boyd and Clowers' substantial rights when they are viewed in the context of the entire record; (2) that the district court's jury instructions rectified the erroneous statements; and (3) that any injury to the defendants was harmless in view of the overwhelming evidence of their guilt. We agree with the government that the error was harmless, as the evidence of Boyd and Clowers' guilt was overwhelming. *See, e.g., United States v. Butera,* 677 F.2d 1376, 1383 (11th Cir.1982).

---

[4]The government points out that *Beasley* was decided after Boyd and Clowers' trial. *See* Brief for the United States at 43. Implicit in this statement is the argument that the prosecutor in this case had no notice that her argument might be improper because *Beasley* had not yet been decided. However, while the remarks complained of in *Beasley* were similar to those here, *Beasley* merely applied the age-old rule that prosecutorial comments calculated to inflame a jury are improper, *see id.* at 1560 & n. 24 (citing *United States v. Bascaro,* 742 F.2d 1335, 1354 (11th Cir.1984)), and the remarks at issue here clearly were intended to make the jury angry at Boyd and Clowers. Prosecutors have a responsibility not only to prosecute cases diligently, but also to refrain from using improper methods in doing so. *See, e.g., Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

The fact that we do not reverse the convictions in these cases does not mean that we condone remarks of this kind. We repeatedly have expressed concern over how often we are presented with improper prosecutorial comments as grounds for review. *See Butera,* 677 F.2d at 1383 (listing cases). As we did in *Butera,* we encourage the district courts to be watchful for improper remarks, to give appropriate curative instructions, and to consider more formal disciplinary action to deter persistent or flagrant misconduct. *See id.*

## IV. CONCLUSION

Clowers' conviction on the charge of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846 (Count 1) is VACATED; his sentences on all counts are VACATED, and his case is REMANDED for resentencing on all counts other than Count 1. The district court is AFFIRMED with respect to all other issues.

VACATED AND REMANDED IN PART; AFFIRMED IN PART.