Randy T. LANIER, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 98–2689.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 2, 1999.

Decided Feb. 9, 2000.

As Amended June 12, 2000.

Robert W. Ritchie (argued), Ritchie, Fels & Dillard, Knoxville, TN, for Petitioner–Appellant.

Michael Thompson (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, Michael C. Carr, Office of the United States Attorney, Benton, IL, for Respondent–Appellee.

Before CUDAHY, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

We once reviewed the convictions of Randy Thomas Lanier on direct appeal in *United States v. Kramer*, 955 F.2d 479 (7th Cir.1992), and he appears before us again under 28 U.S.C. § 2255. Seven years ago, we affirmed his convictions for conspiracy to distribute marijuana and participation in a continuing criminal enterprise. Lanier now asks us to reconsider his convictions in light of two recent Supreme Court rulings: *Richardson v. United States*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), and *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). We agree that his convictions violated the holdings of both cases but, unfortunately for Lanier, find that this changes little for him. We affirm the district court decision to vacate Lanier's conspiracy conviction but let the CCE conviction and its life sentences and in light of *Rutledge;* we find that the trial court committed harmless error under *Richardson.*

## I. HISTORY

Randy Thomas Lanier enjoyed success in auto racing during the early 1980s and won rookie of the year honors at the Indianapolis 500 in 1986. The cash rewards of racing provided him venture capital for the lucrative sideline occupation of directing a drug-dealing enterprise that imported several hundred tons of marijuana into the United States. We described his operation more fully on direct appeal in *Kramer*, 955 F.2d at 482–83. Lanier's drug enterprise collapsed when he and two confederates were arrested and charged with (1) conspiracy to distribute marijuana under 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); (2) participation as a principal administrator, organizer or leader of a continuing criminal enterprise ("CCE") under 21 U.S.C. § 848; and (3) conspiracy to commit federal tax fraud under 18 U.S.C. § 371.

Their trial began on January 26, 1988, and ran fourteen weeks before Judge James Foreman in the United States District Court for the Southern District of Illinois. Pursuant to Seventh Circuit precedent at the time, Judge Foreman did not instruct the jury that it must agree unanimously beyond a reasonable doubt which underlying violations constitute the "continuing series" for a CCE conviction. After five days of deliberation, during which the jury spent most of its time considering the CCE charges and deadlocked five times, the jury convicted all three defendants on all counts.

For the CCE conviction, Lanier was sentenced to the mandatory term of life imprisonment without possibility of parole. Lanier also received a forty-year term of imprisonment for conspiracy and a five-year term for tax fraud added consecutively to the end of his forty-year sentence, with the forty-five-year cumulative sentence to run concurrently with his life sentence for CCE. Finally, the jury found Lanier liable for $60 million in criminal forfeitures relating to his CCE conviction.

During the forfeiture proceeding, the government requested a total forfeiture of almost $68 million for Lanier's participation in seven different drug shipments. The government claimed the following sums as Lanier's shares of the profits from the seven shipments: $2.2 million and $3 million for two shipments to Melbourne, Florida; $3 million for a Bridgeport, Connecticut, shipment; $12.8 million for a shipment to New York, New York; $15.5 million and $15 million for two Redwood City, California, shipments; $16.5 million for a New Orleans, Louisiana, shipment. The jury found Lanier liable for $60 million total in criminal forfeitures but returned its verdict without specifying the shipments in which Lanier had participated.

Lanier and two co-defendants appealed their CCE and conspiracy convictions, launching a flurry of assorted claims including two that are presented again in Lanier's § 2255 petition. We rejected all their claims in *Kramer* on January 30, 1992. 955 F.2d 479.

On February 20, 1996, Lanier filed this § 2255 petition. He offered two claims not argued on direct appeal: (1) civil forfeiture of his property in an earlier proceeding constituted punishment for his crimes so his subsequent criminal convictions in a later proceeding violated the double jeopardy prohibition on successive punishment; (2) double jeopardy barred contemporaneous convictions for CCE and conspiracy to distribute. On April 23, 1997, before the district court ruled on Lanier's pending § 2255 petition, Lanier filed a supplement to his original petition, in which he added two arguments previously raised in his direct appeal: (1) the district court erred by failing to instruct the jury that it must agree unanimously which underlying crimes constitute the "continuing series" necessary for a CCE conviction; (2) the district court erred by permitting the jury to rely on the conspiracy charge as one of the violations within the continuing series even though some of

the predicate acts for the conspiracy fell outside the statute of limitations for CCE offenses.

On March 5, 1998, the district court granted Lanier's petition by vacating the conspiracy conviction in light of *Rutledge*, subject to reinstatement if the CCE conviction is overturned, and applied Lanier's fifty dollar special assessment fee to Lanier's criminal forfeiture judgment. However, the district court let stand Lanier's CCE conviction and life sentence and denied Lanier's petition on all other grounds. Lanier now appeals the district court's decision to vacate his conspiracy conviction rather than his CCE conviction and the denial of his petition with respect to his *Richardson* and statute of limitations claims.

## II. ANALYSIS

■ We review *de novo* a district court's denial of a motion under § 2255 to vacate, alter or amend criminal sentences. *See Gray–Bey v. United States*, 156 F.3d 733, 737 (7th Cir.1998), *cert. denied*, 525 U.S. 1092, 119 S.Ct. 849, 142 L.Ed.2d 703 (1999). We review a district court's resentencing decisions under § 2255 for abuse of discretion. *See United States v. Smith*, 103 F.3d 531, 534 (7th Cir.1996) (entrusting to the district court's discretion the restructuring of the defendant's sentence when vacatur of a conviction is required under § 2255).

### A. Absence of Richardson Jury Instructions

A jury found Lanier guilty of both conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848. Section 848 defines CCE as "a continuing series of violations" of drug offenses undertaken in concert with five or more other persons with respect to whom the defendant occupies a position of organizer, supervisor or manager. *See* 21 U.S.C. § 848. Conviction for CCE requires a unanimous finding

that the defendant committed a "continuing series of violations," but Seventh Circuit precedent at the time of Lanier's trial and direct appeal did not mandate a jury instruction requiring jury unanimity regarding which specific violations form the continuing series. *See Kramer*, 955 F.2d at 486–87. We so held in *Kramer*, where we rejected Lanier's unanimity instruction argument on direct appeal and affirmed his conviction. *Id.*

■ In March 1999, the district court rejected this unanimity instruction claim in Lanier's § 2255 petition, reasoning that Lanier was barred from arguing this claim under § 2255 because he already raised and lost this issue in *Kramer*. However, the Court's decision in *Richardson* in June 1999 represents changed circumstances of law since *Kramer*, which permits Lanier to present his claim here under § 2255. We now reconsider whether the absence of a unanimity instruction, which Lanier presciently requested at trial, requires reversal of Lanier's CCE conviction.

Before the Supreme Court decided *Richardson*, the circuits split on the issue whether a CCE conviction requires jury unanimity regarding which violations constitute the continuing series. *Compare United States v. Richardson*, 130 F.3d 765, 779 (7th Cir.1997) (holding that jury unanimity is not required), *vacated by Richardson*, 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), *United States v. Hall*, 93 F.3d 126, 129 (4th Cir.1996) (same), *and United States v. Anderson*, 39 F.3d 331, 350–51 (D.C.Cir.1994) (same), *with United States v. Edmonds*, 80 F.3d 810, 822 (3d Cir.1996) (ruling that the jury must unanimously agree on which violations constitute the continuing series). In *Richardson*, the Supreme Court held that a jury must agree unanimously on which specific predicate acts constitute the "continuing series of violations" for a CCE conviction. 119 S.Ct. at 1710–13. The Court decided that each predicate violation within the series is itself an element of the CCE offense and that the jury must agree unanimously not

only that the defendant committed a "continuing series of violations" but agree unanimously also about which violations the series comprised. *See id.* Thus, a defendant is entitled to an instruction that the jury must agree unanimously which specific acts support the CCE conviction. *See id.* Otherwise, a jury could convict a defendant even though some jurors found that the CCE conviction is based on one set of continuing violations while other jurors found that it is based on a different set of continuing violations.

■ We note quickly that *Teague v. Lane,* 489 U.S. 288, 305–09, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not apply. Lanier is entitled to the benefit of *Richardson,* even on collateral attack, because *Teague* only bars retroactive application of a "new rule" of criminal procedure. *Id.* *Richardson* simply articulated the meaning of "continuing series of violations" in § 848, and *Teague* is inapt here where we interpret a criminal statute. *See Bousley v. United States,* 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Furthermore, although Lanier presented his *Richardson* argument in a supplement to his original § 2255 motion, the supplemental filing did not constitute a "second or successive motion." Supplemental briefs submitted before the district court has decided the original motion are amendments to the original motion. *See Johnson v. United States,* 196 F.3d 802, 805 (7th Cir. 1999). Therefore Lanier's supplemental briefing was part of a single § 2255 motion properly before us now.

■ Lanier predictably insists that the district court failure to provide the unanimity instruction was a "structural" constitutional error within the meaning of *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), which would require us to reverse Lanier's conviction without evaluating the prejudicial effect of the error. Such structural errors are so intrinsically harmful that they require automatic reversal of conviction. *See id.* at 310, 111 S.Ct. 1246. The government disagrees and insists that the absence of a unanimity instruction is subject to harmless error analysis. Fortunately, the Supreme Court's decision last term in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), is helpful here.

■ In *Neder,* 119 S.Ct. at 1836, the Court held that omission of an element from the district court charge to the jury is not a structural constitutional error exempt from harmless error analysis. The Court explained that structural errors "infect the entire trial process," *id.* at 1833 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353, (1993)), and "necessarily render a trial fundamentally unfair." *Neder,* 119 S.Ct. at 1833 (quoting *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). The Court recognized that trial errors escape harmless error review only in a "very limited class of cases" and cited the example of "the complete deprivation of counsel or trial before a biased judge" because such a defect necessarily renders the trial fundamentally unfair and vitiates all the jury's findings of guilt. *Neder,* 119 S.Ct. at 1833. In contrast, omission of an element of a crime is not a structural defect, nor is an error involving improper instruction on a single element of an offense. *See id.* at 1833–34 (citing *California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (omission of an "intent or purpose" element of crime); *Yates v. Evatt,* 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (erroneous mandatory rebuttable presumption); *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (erroneous mandatory conclusive presumption); *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (wrong standard for guilt)). An erroneous jury instruction on only one element of the crime draws harmless error analysis because the error does not pervade the entire judicial proceeding and render its outcome categorically unreliable or unjust.

The district court's failure to provide a unanimity instruction for Lanier on the underlying violations for his CCE conviction is likewise subject to harmless error analysis. *See United States v. Escobar–de Jesus*, 187 F.3d 148, 161–62 (1st Cir.1999) (applying harmless error analysis to erroneous jury instructions under *Richardson*); *United States v. Long*, 190 F.3d 471, 476 n.3 (6th Cir.1999). This error is similar to the jury instructions in *Neder* where the court erroneously omitted an essential element of the crime but the harmless error standard applied. Lanier was deprived of a verdict with explicit jury findings listing the offenses on which the jury based its verdict of guilt on the CCE count, just as Neder was deprived of an explicit jury finding of guilt on an element of his offense. In both cases, the district court omitted an element of the offense from the jury instruction, and neither error pervaded the entire trial such that we necessarily must conclude that the verdict was unreliable or the error prejudiced the defense. Instead, we determine whether the absence of a *Richardson* instruction prejudiced Lanier's defense under the harmless error standard.

■ Lanier claims that the test for evaluating harmless error is whether it is apparent beyond a reasonable doubt that the error did not contribute to the verdict at all—an onerous standard for the government to meet. He cites *Sullivan v. Louisiana*, 508 U.S. 275, 278–79, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and *United States v. Russell*, 134 F.3d 171, 181 (3rd Cir.1998), to support his claim, but this is not the proper test. In *Neder*, subsequent to *Sullivan* and *Russell*, the Court announced the standard for harmless error review: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Neder*, 119 S.Ct. at 1838. Lanier's conviction therefore must be affirmed if Lanier would have been convicted for CCE even assuming that the jury had received the *Richardson* unanimity instruction at trial.

■ We must determine from the record whether the jury agreed unanimously on the identity of two specific criminal violations committed by Lanier. The jury found Lanier guilty of CCE and liable for $60 million in forfeitures in connection with his CCE violations, but returned its verdict without identifying the specific shipments in which Lanier had participated and upon which the CCE conviction and forfeitures were based. Even without a *Richardson* instruction, Lanier's CCE conviction signifies that each juror found Lanier guilty of at least two drug crimes because conviction for CCE requires a unanimous finding of guilt for at least two continuing violations. *Kramer*, 955 F.2d at 486.

We can be sure that the jury agreed unanimously on at least two specific criminal violations because Lanier, in the face of overwhelming evidence about his involvement, did not even contest the government's allegation of his active participation in the drug-dealing enterprise that included at least seven drug shipments in addition to innumerable individual drug offenses. Indeed, Lanier's attorney conceded in his opening statement that there would not "be any effort to this jury to say that Randy Lanier is not involved, or that he did not do some of the things you will hear about. We will not do that." His attorney explained in closing argument that "there is no dispute that Randy Lanier bought and sold marijuana, and he did it for a number of years. And in doing so, he undoubtedly engaged in a conspiracy with many of the people you saw in the witness stand to do so. There is not dispute about that.... We did not hide it from you. We did not try to deny it." Lanier's attorney conceded to the court at one point that the government has "got 600,000 pounds of marijuana for the love of Pete. They have got thirty some odd cooperating individuals all of whom are saying they are doing these bad things."

Lanier instead argued at trial that his involvement was as a middle-man, not as a leader, and contested the government's allegation that Lanier served as a principal administrator of the operation.

The jury's forfeiture judgments under the lesser preponderance of the evidence standard reinforces our conclusion that the jury unanimously agreed on Lanier's participation in at least two continuing drug offenses. At the forfeiture proceeding, the government claimed almost $68 million as Lanier's share of the profits from seven separate drug shipments. Although Lanier's share of three shipments were less than $3 million for each, Lanier earned much more for each of the other four shipments: $12.8 million, $15.5 million, $16.5 million and $15 million. Without finding Lanier guilty of criminal participation in each of these shipments, the forfeiture total would have fallen short of $60 million without all four sums.

█ The indictment listed three types of illegal conduct relating to the drug shipments, each of which could have served as an underlying violation to support Lanier's CCE conviction: (1) distribution of a controlled substance under 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute under 21 U.S.C. § 841(a)(1); (3) importation of a controlled substance under 21 U.S.C. § 952(a). The government contends each juror must have found that Lanier had committed possession with intent to distribute because that crime is encompassed by both distribution and importation under these facts. We agree.

█ First, importation and possession with intent to distribute are coextensive here. Both crimes require possession of a controlled substance and knowledge, and the added requirement of intent to distribute under § 841(a)(1) is implicit in a guilty verdict for importation because no rational juror could conclude that Lanier imported at least 280 tons of marijuana for his own personal use without intent to distribute to others. *See, e.g., United States v. Stribling*, 94 F.3d 321, 325 (7th Cir.1996); *see also United States v. Beltran–Garcia*, 179 F.3d 1200, 1206 (9th Cir. 1999). Lanier could not have committed the crime of importation without also committing the crime of possession with intent to distribute. Second, the elements of distribution include the elements of possession with intent to distribute. Conviction for distribution under § 841(a)(1) requires the following elements: (1) knowledge that marijuana is a controlled substance; (2) possession; (3) intent to distribute; (4) transfer from one person to another. *See United States v. Johnson*, 127 F.3d 625, 628 (7th Cir.1997). The first three elements suffice for conviction under § 841(a)(1) for possession with intent to distribute, *see United States v. Covarrubias*, 65 F.3d 1362, 1369 (7th Cir. 1995), so the jury could not have found Lanier guilty of distribution without also finding him guilty of possession with intent to distribute.

In light of the overwhelming evidence against Lanier and the fact that he did not contest his involvement in the drug-dealing operation, combined with the jury's forfeiture judgments, we agree with the government that the jury would have unanimously found Lanier guilty of at least two violations of § 841(a)(1) for possession of a controlled substance with intent to distribute. Although the jury instruction in Lanier's trial were improper under *Richardson*, this was harmless error. We will affirm denial of Lanier's § 2255 petition with respect to his *Richardson* Claim.

### B. Vacatur of the Conspiracy Conviction Under Rutledge

█ The Supreme Court in *Rutledge*, 517 U.S. at 300, 116 S.Ct. 1241, held that conviction for both conspiracy to distribute marijuana and CCE, based on the same drug distribution enterprise, violates the presumptive prohibition against double punishment for the same offense. *See also*

*Ball v. United States,* 470 U.S. 856, 861–64, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (requiring clear legislative intent for double punishment for a single offense); *Whalen v. United States,* 445 U.S. 684, 691–95, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Recognizing that conviction for CCE requires proof of every fact necessary to convict for conspiracy to distribute, the Court concluded that "conspiracy as defined in § 846 does not define a different offense from the CCE offense defined in § 848." *Rutledge,* 517 U.S. at 300, 116 S.Ct. 1241. Thus, the Court held that conspiracy to distribute marijuana is a lesser included offense within CCE and conviction for both crimes violates the presumption that Congress intended only one punishment for a single offense. *See id.* at 307, 116 S.Ct. 1241. The Court reversed and remanded for further proceedings but did not specify which conviction should be vacated and which should stand. *See id.*

■ Lanier interprets this silence to mean that district courts should let stand the conviction that is "most justified by the totality of the circumstances" and vacate the other conviction. Citing jury notes from his trial, Lanier points out that the jury convicted him quickly on the conspiracy count but deliberated for five days over the CCE count. Lanier claims that the jury would have convicted for conspiracy and acquitted him of CCE had the district court, pursuant to *Rutledge,* provided a lesser included crime instruction. Lanier also cites purported mitigating factors including the notion that marijuana is "not as harmful as many other contolled substances" and the fact that he was only in his youthful late-twenties at the time of his offenses. Although Lanier did not raise this lesser included offense argument on direct appeal, the Court's intervening decision in *Rutledge* since his direct appeal provides reasonable cause to excuse Lanier's failure and to hear this claim under § 2255. *See Reed v. Ross,* 468 U.S. 1, 17, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (holding that failure to raise a claim on direct

appeal is excusable when the claim is based on a new rule of constitutional law with retroactive effect decided after direct appeal).

■ The government wisely concedes that *Rutledge* applies here and agrees that the conspiracy conviction must be set aside. Nevertheless, Lanier argues that the district court improperly applied *Rutledge* by vacating the lesser conviction for conspiracy rather than the CCE conviction. However, when the presumption against double punishment requires invalidation of the conviction for either the greater or lesser offense, the choice of which conviction to vacate rests with the sound discretion of the district court. *See Ball,* 470 U.S. at 864, 105 S.Ct. 1668; *United States v. Martin,* 732 F.2d 591, 593 (7th Cir.1984). We agree with the government that the district court did not abuse its discretion by vacating the lesser conviction of conspiracy and letting the CCE conviction stand. *See United States v. Boyd,* 131 F.3d 951, 954–55 (11th Cir.1997) ("The proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and the sentence of the lesser included offense."); *see also United States v. McSwain,* 197 F.3d 472, 483 (10th Cir.1999); *United States v. Brito,* 136 F.3d 397, 408 (5th Cir.1998); *United States v. Rosario,* 111 F.3d 293, 301 (2d Cir.1997). The infirmity of which Lanier complains is a technical one and does not diminish the finding of guilt for CCE. He was convicted of two crimes for the same predicate offense. It is not unjust nor an abuse of discretion to punish him for either crime here because the jury found him guilty of committing the offense that underlies both convictions. To argue that the conspiracy conviction was more justified or more certain than the CCE conviction is beside the point. *Rutledge* commands that Lanier receive only one punishment for his offense, but he was guilty of both crimes in fact.

Reviewing this § 2255 motion, the district court let stand the conviction for the

more serious crime of CCE and vacated the lesser included conspiracy conviction as duplicative of the CCE conviction. It would be paradoxical for us to rule that his life sentence for the CCE count should be vacated on account of his lesser conspiracy conviction when there would be no question at all had the government successfully convicted Lanier only on the CCE count and not charged or convicted him for the lesser offense as well. The district court did not abuse its discretion by vacating the conspiracy conviction and letting the CCE conviction stand.

### C. Statute of Limitations

■ Lanier argues that the court improperly instructed the jury that it could rely upon the charged conspiracy under § 846 as one of the violations underlying the CCE count even though some of the predicate acts upon which the conspiracy charge was based were not within the statute of limitations period for the CCE count. However, Lanier failed to raise this nonconstitutional claim on direct appeal and now is barred from raising it for the first time in this § 2255 petition regardless of cause and prejudice. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir.1997); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir.1995); *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir.1988). The district court dismissed Lanier's statute of limitations claim on this ground, and we will affirm.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the grant of Lanier's § 2255 motion and vacatur of Lanier's conspiracy conviction, AFFIRM denial of Lanier's petition under his *Richardson* claim because we find harmless error and AFFIRM denial of Lanier's petition under his statute of limitations claim.